# UNITED STATES BANKRUPTCY COURT FOR THE
## NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | **Chapter 7** |
| AGRIPROCESSORS, INC. ) | |
| ) | **Bankruptcy No. 08-2751** |
| DEBTOR. ) | |
| ) | |
| JOSEPH E. SARACHEK, ) | |
| in his capacity as ) | |
| CHAPTER 7 TRUSTEE, ) | |
| ) | |
| PLAINTIFF, ) | **Adversary No. 10-09131** |
| ) | |
| v. ) | |
| ) | |
| CHABAD OF NORTH FULTON, INC., ) | |
| f/k/a CHABAD OF ALPHARETTA, INC.) | |
| ) | |
| DEFENDANT. ) | |

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter came before the Court in a telephonic hearing on Defendant's

Motion for Summary Judgment.  Dan Childers appeared on behalf of Plaintiff,

Joseph E Sarachek, in his capacity as Chapter 7 Trustee.  Charles I. Pollack

appeared on behalf of Defendant, Chabad of North Fulton Inc. ("Chabad").  After

hearing the parties' arguments, the Court took the matter under advisement.  This

is a core proceeding under 28 U.S.C. § 157(b)(2)(F).

## STATEMENT OF THE CASE

On March 10, 2008, Agriprocessors made a $50,000.00 payment to Chabad.

Trustee originally claimed the $50,000.00 payment is a fraudulent conveyance

recoverable under § 548.  Defendant moved for summary judgment on the § 548

claim, arguing that the $50,000.00 was repayment of a loan Defendant made to

Debtor and was therefore an exchange for reasonably equivalent value.  Trustee

filed both a Resistance to the Motion for Summary Judgment and a Motion for

Leave to Amend his Complaint.  Trustee sought to amend his Complaint to recover

the $50,000.00 as a preferential transfer under § 547.  This Court granted

Defendant's Motion for Summary Judgment on the § 548 claim and Trustee's

Motion to Amend to assert a § 547 claim.  Sarachek v. Chabad of N. Fulton, Inc.

(In re Agriprocessors, Inc.), Bankr. No. 08-02751, Adv. No. 10-09131, 2011 WL

4900037, at *7 (Bankr. N.D. Iowa Oct. 14, 2011).

Defendant now moves for summary judgment on Trustee's § 547 claim.

Defendant argues that Trustee cannot recover from Defendant because the transfer

occurred more than ninety days before the bankruptcy and Defendant is not an

insider.  Defendant also argues that the transfer occurred in the ordinary course of

business and may not be avoided under § 547(c)(2).  Trustee resists and argues that

both the "insider" and "ordinary course of business" issues involve disputes of

2

material fact.  The Court agrees with Trustee and denies the Motion for Summary

Judgment.

## FACTUAL BACKGROUND

Debtor owned and operated one of the nation's largest kosher meatpacking

and food-processing facilities in Postville, Iowa.  On November 4, 2008, Debtor

filed a Chapter 11 petition in the Bankruptcy Court for the Eastern District of New

York.  Debtor's bankruptcy petition and accompanying documents recited that its

financial difficulties resulted from a raid conducted by U.S. Immigration and

Customs Enforcement.  A total of 389 workers at the Postville facility were

arrested.  The raid led to numerous federal criminal charges, including a high-

profile case against Debtor's President, Sholom Rubashkin.  Debtor's petition also

stated it had over 200 creditors and assets and liabilities in excess of $50,000,000.

The court eventually approved the appointment of Joseph E. Sarachek as the

Chapter 11 trustee.  The court concluded that appointing a trustee was necessary in

part "for cause, including fraud, dishonesty, incompetence, or gross

mismanagement of the affairs of the debtor by current management" under

§ 1104(a)(1).  After hearings in a later proceeding, the court transferred the case to

this Court on December 15, 2008.  This Court eventually converted the case to a

Chapter 7 bankruptcy.  The U.S. Trustee for this region retained Mr. Sarachek as

the Chapter 7 trustee.

On October 26, 2010, Trustee filed a Complaint against Defendant seeking

to avoid a $50,000.00 payment as a fraudulent transfer under § 548, which was

later amended to include a preferential transfer claim under § 547.  The transfer at

issue here came about when Debtor contacted Defendant to ask for a short term

loan in early 2008.  Hirsch Minkowicz, Defendant's Rabbi, Director, and CEO,

orally agreed to make the loan.  On March 5, 2008, Defendant sent a $50,000.00

check to Debtor.  There are no written loan documents associated with the

arrangement.  Defendant claims it made the loan based on the reputation of both

Debtor and the Rubashkin family, the owners of Debtor.  Defendant did not inquire

about Debtor's financial condition and did not receive security for the loan.

Debtor negotiated the check on March 6, 2008.  On March 10, 2008, Debtor sent

Defendant a check in the amount of $50,000.00.  Defendant negotiated this check

on March 11, 2008.  This is the transfer Trustee seeks to recover here.

Defendant describes itself as "a non-profit corporation located in the Atlanta

suburbs, found for charitable purposes, supportive of and in keeping with an

Orthodox Jewish religious atmosphere." (ECF Doc. No. 41, at 9.)  Defendant

provided and recited its Articles of Incorporation which state its purposes:

> 1.     To provide a place of rest, recreation and Orthodox
> Jewish religious atmosphere, and to conduct religious services in
> accordance with the tenets and practices of the Jewish faith;
>
> 2.     To conduct a synagogue in strict accordance with the
> Orthodox-Halachic interpretation of Torah and Judaism;

3.      To insure that the sacred tradition inherent in Orthodox Judaism will be maintained;

4.      To provide proper facilities for the dissemination of knowledge and learning of Jewish faith, history, literature and Jewish lifestyles and ideals in accordance with Chabad methods;

5.      To provide, foster and promote religious, educational and social activities in connection with the observance of Jewish holidays and tradition;

6.      To undertake, develop, promote and carry on scientific, in part scientific, literary or educational agencies, institutions or schools;

7.      To encourage the public to give financial support in furtherance of the objectives of the Corporation; and

8.      To engage in any such other activities as are not inconsistent with the purposes stated above and are conferred by virtue of common  law or the Georgia Nonprofit Corporation Code.

In furtherance of its mission, Defendant noted that it often loaned money to other Orthodox Jewish cases on a short-term basis.  Id.  Defendant admits it is not a lending institution, but notes it has made loans in the past to other Orthodox Jewish entities.  From December 1, 2006, to February 28, 2011, Defendant made a total of eight loans.  Defendant made a loan to Debtor for $50,000.00, and the other seven loans varied in amount from $1,500.00 to $27,000.00.  There is no documentation for any of the loans, Defendant claims that the repayment time fluctuated between a few days to a few months.  (Supplement to Def.'s Resp. to Pl.'s First Set of Interrogs., ECF Doc. No. 55-3, at 6–7.)

Defendant further noted that making such loans, on an interest-free basis,

was consistent with its religious principles and teachings.  On November 3, 2008,

Rabbi Minkowicz published a letter in the religious media pleading for the Jewish

community to support the Rubashkin family.  In this letter, Rabbi Minkowicz

stated that he was a "relative" of the Rubashkin family.  Debtor's then-CEO,

Sholom Rubashkin, and Defendant's CEO Hirsch Minkowicz are second cousins,

once removed.  Their common relative is Rubashkin's great-great grandfather and

Minkowicz's great-great-great grandfather.  Rabbi Minkowicz's brother, Sholom

Minkowicz, is married to Chana Rubashkin, sister of Sholom Rubashkin.  Sholom

Minkowicz was the warehouse manager of Debtor's New York branch.  The

Rubashkins and Minkowiczes are both part of the Chabad community, which is a

"close-knit" community.  (Decl. Sholom Mikowicz, ECF Doc. No. 42, at 2.)

> The "Chabad" community is tight-knit and largely based in the Crown
> Heights section of Brooklyn, New York. Families are often large . . .
> Rabbi Hirsch Minkowicz and Sholom Minkowicz come from a family
> of 9 children, and Sholom Rubashkin has 10 children (Trial
> Testimony of YomTov Bensasson, given October 22, 2009, page 62,
> lines 13-20).  Due to the culture of the community, it is easy to see
> that these large families creates a spider-web of relationships, such
> that nearly everyone in the community is related, by either blood or
> marriage.  Alternatively, even if not related, nearly everyone in the
> community easily would know, or know of, each other.

(ECF Doc. No. 41, at 10.)

Chabad made three purchases of Debtor's products in the two years before

the bankruptcy filing.  Other than these three transactions, Defendant is not a

6

customer of Debtor.  Defendant notes that while an undocumented loan to a

customer might look unusual to transactional attorneys, such transactions are

common in the "Chabad" community.

## CONCLUSIONS

### I.    Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law."  Fed. R. Civ. P. 56; Fed. Bankr. R. P. 7056.  "The granting of

summary judgment is proper if, after viewing the evidence and drawing all

reasonable inferences in the light most favorable to the nonmovant, no genuine

issues of material fact exist and the movant is entitled to judgment as a matter of

law."  Hayek v. City of St. Paul, 488 F.3d 1049, 1054 (8th Cir. 2007).

The moving party bears the burden of showing that there are no genuine

issues of material fact.  Winthrop Res. Corp. v. Eaton Hydraulics, Inc., 361 F.3d

465, 468 (8th Cir. 2004).  The moving party may discharge its burden by

demonstrating that the nonmoving party does not have evidence to support its case.

Celotex v. Catrett, 477 U.S. 317, 325 (1986).  "Once the movant has supported the

motion, the non-moving party 'must affirmatively show that a material issue of fact

remains in dispute and may not simply rest on the hope of discrediting the

movant's evidence at trial.'"  In re Houston, 385 B.R. 268, 271 (Bankr. N.D. Iowa

2008) (quoting <u>Barge v. Anheuser-Busch</u>, 87 F.3d 256, 260 (8th Cir. 1996)).

"When a moving party has carried its burden under Rule 56(c), the party opposing

summary judgment is required under Rule 56(e) to go beyond the pleadings, and

by affidavits, or by the depositions, answers to interrogatories, and admissions on

file, <u>designate specific facts</u> showing there is a genuine issue for trial." <u>G.E.</u>

<u>Capital Corp. v. Commercial Servs. Grp., Inc.</u>, 485 F. Supp. 2d 1015, 1022 (N.D.

Iowa 2007) (quotations omitted) (emphasis added).

"A fact is material if it 'might affect the outcome of the suit under the

governing law.'" <u>Johnson v. Crooks</u>, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). An issue of material

fact is genuine if a reasonable jury could return a verdict for the nonmoving party

on the question. <u>Anderson</u>, 477 U.S. at 252. Evidence that raises "some

metaphysical doubt as to the material facts" will not create a genuine issue of fact.

<u>Matsushita v. Zenith Radio</u>, 475 U.S. 573, 586 (1986)). "'Where the record taken

as a whole could not lead a rational trier of fact to find for the nonmoving party,

there is no genuine issue for trial.'" <u>Blocker v. Patch (In re Patch)</u>, 526 F.3d 1176,

1180 (8th Cir. 2008) (quoting <u>Matsushita</u>, 475 U.S. at 587)).

**II.   Preferential Transfer from Insider**

Trustee seeks to avoid the $50,000.00 transfer to Defendant as a preferential

transfer under § 547.  A trustee may avoid a transfer as preferential if the transfer

of the debtor's property (1) was for the creditor's benefit; (2) was for a preexisting

debt; (3) occurred while the debtor was insolvent; (4) occurred within ninety days

of filing the bankruptcy petition, or within one year if the defendant is an insider;

and (5) the creditor received more than it would have received in a Chapter 7

liquidation.  11 U.S.C. § 547(b).  The transfer between Defendant and Debtor

occurred in March 2008, which was not within ninety days of the filing of the

bankruptcy petition.  Trustee may only recover this transfer as a preference if

Defendant is an insider.

### A.   Statutory Insider

The Bankruptcy Code's definition of an insider of a corporation includes a

"relative of a general partner, director, officer, or person in control of the debtor."

11 U.S.C. § 101(31).  The Code defines relatives as those who are "related by

affinity or consanguinity within the third degree."  11 U.S.C. § 101(45).  Rabbi

Hirsch Minkowicz is a distant relative of Sholom Rubashkin.  As second cousins,

once removed, they are related within the seventh degree of consanguinity.

Chabad, 2011 WL 4900037, at *6.  Since they are not related within the third

degree, Rabbi Minkowicz does not qualify as a statutory insider.  Id.  Although

they are not related within the third degree by consanguinity, Trustee argues that

Rabbi Minkowicz is related within the third degree by affinity because his brother

9

is married to Chana Rubashkin, sister of Sholom Rubashkin and daughter of Aaron

Rubashkin, Agriprocessor's sole shareholder.

Affinity is a relationship that occurs between people as a result of marriage.

There are different levels of affinity: direct affinity is "the relationship of a spouse

to the other spouse's blood relatives"; secondary affinity is "the relationship of a

spouse to the other spouse's marital relatives"; and collateral affinity is "the

relationship of a spouse's relatives to the other spouse's relatives."  Black's Law

Dictionary 67 (9th ed. 2009).  When courts consider relationships by affinity, they

look at direct affinity.  See, e.g., State v. Allen, 304 N.W.2d 203, 207 (Iowa 1980)

("[Affinity] is the relationship which one spouse has because of the marriage to

blood relatives of the other.  'By the marriage, one party thereto holds by affinity

the same relation to the kindred of the other that the latter holds by

consanguinity . . . .'" (quoting Simcoke v. Grand Lodge A.O.U.W. of Iowa, 51

N.W. 8, 9 (Iowa 1892))).

Since courts look at "direct affinity" rather than "collateral affinity" to

determine whether individuals are related, there is not an affinity relationship

between the blood relatives of one spouse and the blood relatives of the other

spouse.  Smith v. Supreme Tent, Knights of Maccabees of the World, 102 N.W.

830, 830 (Iowa 1905) ("[R]elationship by affinity is not created between the blood

relatives on either side of the parties to the marriage relation."); Chinn v. State, 26

10

N.E. 986, 987 (Ohio 1890) ("[T]here is no affinity between the husband's brother

and the wife's sister . . . because then the connection is formed, not between one of

the spouses and the kinsmen of the other, but between the kinsmen of both.");

see also White v. State, 756 N.E.2d 1057, 1060–61 (Ind. Ct. App. 2001)

(explaining that the blood relatives "of the husband are not at all related to the"

blood relatives of the wife) (quoting Tegarden v. Phillips, 42 N.E. 549, 551 (Ind.

Ct. App. 1895)); State v. Noren, 371 N.W.2d 381, 385 (Wis. Ct. App. 1985)

("Marriage does not cause the blood relatives of one spouse to become related to

the blood relatives of the other spouse.").

Applying this definition of affinity, Sholom Minkowicz is related by affinity

to Aaron Rubashkin because Aaron is a blood relative of Sholom's wife.

Similarly, Hirsch Minkowicz is related by affinity to Chana Rubashkin because

Hirsch is related by blood to her husband.  However, the fact that Hirsch

Minkowicz's brother is related by affinity to Aaron Rubashkin does not mean that

Hirsch is related by affinity to Aaron—either Aaron or Hirsch's spouse would need

to be a blood relative of the other to be related by direct affinity.  Rabbi Minkowicz

is not a relative within the third degree of Aaron or Sholom Rubashkin by either

consanguinity or affinity, and is therefore not a statutory insider.

Trustee also argues that there is a statutory insider relationship based on

Sholom Minkowicz's role in Agriprocessors.  Since Sholom Minkowicz is not an

11

officer or director of Debtor, it appears that Trustee is arguing that Sholom

Minkowicz is a statutory insider as a "person in control of the debtor."  11 U.S.C.

§ 101(31)(B)(iii).  In the statutory insider context, a "person in control" is an

individual who "controls the debtor's day-to-day financial, personnel and business

operations."  Official Comm. of Unsecured Creditors of Grumman Olson Indus.

Inc. v. McConnell (In re Grumman Olson Indus., Inc.), 329 B.R. 411, 428 (Bankr.

S.D.N.Y. 2005).  A person in control of a debtor is one who can "unqualifiably

dictate corporate policy and the disposition of corporate assets."  Anstine v. Carl

Zeiss Meditec AG (In re U.S. Med., Inc.), 531 F.3d 1272, 1278–79 (10th Cir.

2008) (quoting Three Flint Hill Ltd. P'ship v. Prudential Ins. Co. (In re Three Flint

Ltd. P'ship), 213 B.R. 292, 299 (D. Md. 1997)); In re TBR USA, Inc., 429 B.R.

599, 624 (Bankr. N.D. Ind. 2010).  It may also be a person who has "a controlling

interest in the debtor."  TBR USA, Inc., 429 B.R. at 624; Grumman Olson Indus.,

329 B.R. at 428.  In this case, Sholom Minkowicz worked for Agriprocessors as a

manager for a warehouse in New York.  His name appears on a corporate banking

resolution, which Sholom says he did not fill out and does not remember signing.

(Decl. Sholom Minkowicz, ECF Doc. No. 42, at 3.)  He was not an officer or

director, and he did not have any ownership interest in Agriprocessors.  Id.  He

worked under another individual, and his job duties did not provide him with

authority to make loans.  Id. at 3–4.  He did not have the authority to "dictate

12

corporate policy." U.S. Med., Inc., 531 F.3d at 1279.  It does not appear that

Sholom Minkowicz is a "person in control of the debtor" for purposes of statutory

insider status.

### B.   Non-Statutory Insider

Although Defendant does not appear to be a statutory insider, § 101's

definition of insider is not exhaustive.  Helena Chem. Co. v. Richmond (In re

Richmond), 429 B.R. 263, 297 (Bankr. E.D. Ark. 2010) ("The court is allowed to

look beyond the statute to determine if someone is an insider."); see also Schubert

v. Lucent Techs. Inc. (In re Winstar Commc'ns, Inc.), 554 F.3d 382, 396 (3d Cir.

2009) (stating that whether a party is a "person in control" and therefore a statutory

insider is a different question, subject to different standards, from whether a party

is a non-statutory insider).  Whether a party is a non-statutory insider is "a mixed

question of law and fact."  Stalnaker v. Gratton (In re Rosen Auto Leasing, Inc.),

346 B.R. 798, 803 (B.A.P. 8th Cir. 2006).  "An insider is one who has a

sufficiently close relationship with the debtor that his or her conduct should be

subject to closer scrutiny than those dealing at arms length with the debtor."  Id. at

804.  Courts consider the "closeness of the relationship" and whether the creditor

has control over a debtor when determining whether a party is a non-statutory

insider.  Id.  "A creditor not dealing at arm's length with debtor, and whose special

relationship with debtor enables it to compel payment of its claim, has **sufficient**

control over debtor to be **deemed** an insider." Eide v. Nat'l City Capital Corp. (In

re Riversideworld, Inc.), 366 B.R. 34, 43 (Bankr. N.D. Iowa 2007) (emphasis

added) (citing In re Controlled Power Corp., 351 B.R. 470, 475 (Bankr. N.D. Ohio

2006)).

When determining whether a transaction occurred at arms' length, courts

consider several factors, such as whether the loan was unsecured, whether the

creditor inquired about the debtor's solvency or ability to repay, whether the

creditor had control or influence over the debtor, whether there were restrictions on

the debtor's use of the money, whether there was "evidence of a desire to treat this

creditor differently from all other general unsecured creditors," and whether both

parties received a benefit from the transaction. Scarver v. M. Abuhad

Participacoes S.A. (In re Moskowitz), Bankr. No. 10-73348, Adv. No. 10-6650,

2011 WL 6176210, at *7 (Bankr. N.D. Ga. Nov. 29, 2011). Other factors that may

indicate whether the transaction was at arm's length include "the intent of the

parties, whether there was an agreement for repayment . . . [and whether there was]

a note or other document evidencing the debt." Central Coops., Inc. v. Irwin (In re

Colonial Poultry Farms), 177 B.R. 291, 299 (Bankr. W.D. Mo. 1995) (quoting

Jules S. Cohen, Shareholder Advances: Capital or Loans?, 52 Am. Bankr. L. J.

259, 264–65 (1978)).

Here, there is some indication that there was a close relationship between

Defendant and Debtors.  There are family relationships between Rabbi Minkowicz,

CEO of Defendant, and Sholom Rubashkin, Debtor's former CEO.  The Chabad-

Lubavitch community has been described as "close-knit," with the Rubashkin

family having a "favorable reputation" in the community.  (Decl. Sholom

Minkowicz, ECF Doc. No. 42, at 2.)  This may be indicative of a "sufficiently

close relationship" that could have led to a desire to treat this creditor differently

than other creditors.

Similar facts also suggest that the transaction may have been at less than

arm's length.  The loan came about as a result of a phone call between Sholom

Rubashkin and Rabbi Minkowicz.  There was no loan documentation, and the loan

was unsecured.  Defendant did not ask about the Debtor's ability to repay the loan,

and it is unclear from the record whether there were any terms to the agreement or

restrictions on the use of the loan.

Defendant responds by arguing that much of this is common practice within

the Chabad community and is not indicative of non-arms length dealing when

properly understood.  This may very well be the case, but the Court cannot

determine the issue as a matter of law.  The facts are disputed and the Court will

need to make credibility determinations and weigh the competing evidence at trial.

Defendant simply has not met its burden of showing that there are no genuine

issues of material fact regarding its non-statutory insider status.  That issue remains

for determination at trial.

### III.  Ordinary Course of Business Defense

Defendant argues that if it is an insider, its transfer cannot be avoided

because the loan occurred in the ordinary course of business as defined in

§ 547(c)(2).  That section provides that a trustee may not avoid a transfer:

> (2) to the extent that such transfer was in payment of a debt incurred
> by the debtor in the ordinary course of business or financial affairs of
> the debtor and the transferee, and such transfer was—
>
> > (A) made in the ordinary course of business or financial affairs of
> > the debtor and the transferee; or
> >
> > (B) made according to ordinary business terms;

11 U.S.C. § 547(c)(2).  "[T]he policies underlying the ordinary business exception

are two-fold: (1) to encourage creditors to continue dealing with troubled debtors,

and (2) to promote equality of distribution."  Harrah's Tunica Corp. v. Meeks (In

re Armstrong), 291 F.3d 517, 527 (8th Cir. 2002) (citing Union Bank v. Wolas (In

re ZZZZ Best Co.), 502 U.S. 151, 161 (1991)).

The Defendant first needs to show that debt itself was "ordinary for both

parties."  Hanrahan v. Grundy Cnty. Farm Serv. Agency (In re Walterman

Implement, Inc.), Bankr. No. 05-07284, Adv. No. 07-09039, 2007 WL 4224041, at

*2 (Bankr. N.D. Iowa Nov. 27, 2007) (citing Armstrong, 291 F.3d at 527).  "If it is

a first-time transaction, the transaction must be typical compared to both parties'

16

past dealings with similarly-situated parties."  Id. (citing In re Ahaza Sys. Inc., 482

F.3d 1118, 1125 (9th Cir. 2007); Kleven v. Household Bank F.S.B., 334 F.3d 638,

643 (7th Cir. 2003)).

The second element Defendant needs to prove is that the transfer was either

in the ordinary course of the business relationship between the debtor and the

creditor, or that the transfer was "made according to ordinary business terms."  11

U.S.C. § 547(c)(2); Schnittjer v. Pickens (In re Pickens), Bankr. No. 06-01120,

Adv. No. 06-09166, 2008 WL 63251, at *3 (Bankr. N.D. Iowa Jan. 3, 2008).  The

transfer is in the ordinary course of the debtor and creditor's business relationship

when it is "consistent with the pattern of previous transfers between the parties."

Pickens, 2008 WL 63251, at *3.  When the parties do not have an established

business relationship, courts look to whether the parties complied with the contract

terms.  Id.  A creditor can prove that the transfer happened according to ordinary

business terms by providing information about industry practice and then showing

that the transfer occurred according to those industry practices.  Id.

The first question, then, is whether the debt was incurred in the ordinary

course of the parties' businesses.  Defendant is a religious organization, not a

lending institution.  Defendant has loaned money in the past, however.  Between

December 1, 2006 and February 28, 2011, Defendant made seven other loans,

varying from $1,500.00 to $27,000.00.  These loans were undocumented, and the

17

borrowers' repayment time varied from a few days to a few months.  The loan that

Defendant made to Debtor appears to be larger, but the transaction otherwise

follows Defendant's pattern—it was undocumented and paid back within

approximately five days.  However, the record does not provide information about

who received the previous loans, i.e., whether it was typical for Defendant to loan

money to for-profit corporations.  The record also lacks details about the typical

terms of Defendant's loans to other individuals and how those compared to the

terms of Debtor's loan.

The Court also believes there are factual issues about whether this type of

loan—with no contract, no specified repayment terms from a non-profit

institution—was part of Debtor's ordinary course of business.  Debtor certainly

took many loans, as Defendant suggests.  However, Debtor was engaged in

significant fraudulent activity—part of which entailed a pattern of borrowing

money and moving it around to further the fraud.  The Court is not convinced this

is, or ever could be, characterized as an "ordinary course" of business.  At a

minimum, there are additional factual issues that need resolution on these issues at

trial.

Similarly, the second element Defendant needs to prove to prevail on its

argument is that the transfer occurred in the ordinary course of business of the

parties or that the transfer occurred according to ordinary business terms between

the parties.  This was the first loan transaction between the parties, so there is no

established pattern of how the parties ordinarily conduct business with one another.

Since there was no documentation, it is unknown whether the parties complied

with the contract terms, or what the terms were to the oral agreement.  Defendant

could still prove that the transfer was made according to ordinary business terms.

However, the record lacks information about what the "industry standard" is and

whether the transaction between Defendant and Debtor followed the industry

standard.  Therefore, viewing all inferences in favor of the non-moving party,

genuine issues of material fact remain.

      **WHEREFORE**, Defendant's Motion for Summary Judgment is **DENIED**.

      Dated and Entered: March 28, 2013

_____

      **THAD J. COLLINS, CHIEF JUDGE**
      **UNITED STATES BANKRUPTCY COURT**